IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN HUNTER PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:17-cv-524-WC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

On October 17, 2014, John Hunter Parker, ("Plaintiff") filed applications for a period of disability and disability insurance benefits and for supplemental security income, alleging that he became disabled on April 7, 2013.  The applications were denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ rendered an unfavorable decision dated August 23, 2016.  Plaintiff appealed that decision and the Appeals Council denied Plaintiff's request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2]  *See*

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 12); Def.'s Consent to Jurisdiction (Doc. 11). Based on the court's review of the record and the parties' briefs, the court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further consideration.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?

---

Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(5) Is the person unable to perform any other work within the economy? An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal

conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-one years old on the date of the ALJ's decision.  Tr. 40, 227, 229.  He completed high school, during which he took special education classes.  Tr. 248-49.  Plaintiff had past work experience as a general laborer, mechanic helper, warehouse worker, and janitor.  Tr. 82-83, 266-273.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since April 7, 2013, the alleged onset date[.]"  Tr. 19.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "obesity in combination with history of right ankle fracture, schizoaffective disorder, conduct disorder, antisocial disorder, borderline intellectual functioning, attention deficit hyperactivity disorder, and history of seizures[.]"  *Id*.  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 20.  Next, the ALJ articulated Plaintiff's RFC as follows:

> [t]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to occasional climbing ramps and stairs.  The claimant is precluded from climbing ladders and scaffolds.  The claimant can frequently balance, stoop, knee[l], crouch and crawl.  The claimant is also precluded from working around unprotected heights, hazardous, moving mechanical parts and operating a motor vehicle for commercial purposes.  The claimant is limited to simple, repetitive, and routine tasks.  The claimant is limited to occasional interaction with supervisors, coworkers, and the public.  The

claimant is also limited to having occasional changes in a routine work setting. The claimant is precluded from production rate pace, such as assembly line work, but can perform goal-oriented work such as an office cleaner.

Tr. 21. At Step Four, based upon the testimony of a VE, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a janitor . . . and warehouse worker." Tr. 29. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ made an alternative finding that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." Tr. 30. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from April 7, 2013, through the date of this decision[.]" Tr. 31.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents one issue on appeal:

(1) Whether, with respect to Listing 12.05(C), the ALJ erred in finding that Plaintiff did not appear to have any significant deficits in adaptive functioning.

Doc. 10 at 3.

## V. DISCUSSION

Plaintiff argues that the ALJ erred by finding that he did not meet or equal Listing 12.05C. *Id*. at 3. Specifically, Plaintiff asserts that the ALJ erred by applying the wrong legal standard and by requiring him to demonstrate "significant" deficits in adaptive functioning. *Id.* Plaintiff also argues that his work history and daily activities do not rebut the presumption of disability afforded to him by his IQ scores. *Id.* at 8-10.

The Commissioner argues that the ALJ properly relied on Plaintiff's work history and daily activities to find that he had not demonstrated deficits in adaptive functioning. Doc. 13 at 8. The Commissioner also argues that any error that the ALJ might have made by using the word "significant" when discussing Plaintiff's deficits in adaptive functioning is harmless. *Id.* at n.5.

Under the Listing scheme of 12.05, a claimant must first meet the requirements of the introductory paragraph, then the criteria of the subparagraph before he or she can be found to meet the listing. *See* Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). The introductory paragraph of Listing 12.05 defines "intellectual disability" as:

> Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis in original). Thus, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997). An intellectual disability satisfies the severity requirement in paragraph C of Listing 12.05 when the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20

C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). "[T]here is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70." *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1266, 1268-69 (11th Cir. 2001)). The Commissioner may rebut the presumption when the claimant's IQ score "is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

In this case, the ALJ appeared to accept that Plaintiff had IQ scores sufficient to meet Listing 12.05C, but found that the presumption of disability was rebutted by Plaintiff's level of adaptive functioning. In determining that Plaintiff did not satisfy Listing 12.05, the ALJ found as follows:

> Although his most recent IQ scores revealed a Verbal IQ of 65, performance IQ of 72, and a full scale of 65 [], the claimant he [*sic*] does not appear to have any significant deficits in adaptive functioning given his work history and activities of daily living, as discussed in detail . . . below. As such, the claimant's borderline intellectual functioning would not meet listing 12.05.

Tr. 21. Later in the decision while discussing Plaintiff's RFC, the ALJ again noted that "[d]espite the claimant's low IQ, he does not appear to have any significant deficits in adaptive functioning given his work history and activities of daily living. . . ." Tr. 26. With respect to Plaintiff's work history, the ALJ explained that he "had at least five years of substantial gainful activity and has earned more than $20,000 during multiple years." *Id.* When discussing Plaintiff's activities of daily living, the ALJ observed that:

[T]he claimant was reported to perform a variety of activities in his function report and a third party function report completed by his son.[5]  In his function report, the claimant reported that he was able to prepare simple meals, such as sandwiches and frozen dinners.  He also reported he was able to mow grass and clean the house.  The claimant stated he was able to go shopping in stores for food once a month.  He stated he walked around outside, watch [*sic*] television, and played with his son and niece.  In a third party function report completed by the claimant's son, Grady Parker, the claimant was noted to engage in activities including riding horses, fishing, hunting, walking, and swimming.  The claimant was noted to take care of dogs, cats, and horses.  Mr. Parker indicated the claimant has no problems with personal hygiene and can prepare simple meals, such as sandwiches and microwavable items for himself.  In treatment notes, the claimant has been to the hospital after injuries and/or seizures that involved vigorous exercise, digging in the yard and riding an all-terrain vehicle.  In his psychiatric notes, the claimant has reported driving and helping with a family business that appears to involve horseback riding.  The claimant's ability to perform all of the above activities suggests that he is not as limited as alleged.  Despite the claimant's allegations that he rarely leaves the house, the above activities indicate the claimant frequently leaves the house and engages in outdoor activities.

Tr. 24 (internal citations omitted).

Plaintiff contends that the ALJ applied the wrong legal standard when she found that he had not demonstrated "*significant* deficits in adaptive functioning." Doc. 10 at 3; Tr. 21.  Numerous cases in this circuit have discussed the fact that the plain language of Listing 12.05C does not require "significant" deficits in adaptive functioning. *See, e.g.*, *Acoff v. Colvin*, No. 15-0644-M, 2016 WL 4257555, at *8 (S.D. Ala. Aug. 9, 2016) ("[T]he main reason the Court finds that the ALJ's decision is not supported by substantial evidence is because the ALJ misstated the requirements for Listing 12.05 as requiring significant

---

[5] From the court's reading of the testimony and third party function report, it appears that Plaintiff's father assisted him in completing the report.  Tr. 40-41, 274.

deficits in adaptive functioning. This is an error of law."); *Southard v. Colvin*, No. 5:13-cv-01870-JHE, 2015 WL 1186153, at *5 (N.D. Ala. Mar. 16, 2015) ("Listing 12.05 does not require significant deficits in adaptive functioning, just that deficits of adaptive functioning exist and have manifested before age 22."); *Harrel v. Colvin*, No. 14-cv-20513, 2015 WL 574006, at *9 (S.D. Fla. Feb. 11, 2015) ("Listing 12.05C does not require a claimant to show significant or marked deficits but rather, only 'deficits in adaptive functioning.'") (citations omitted); *Butts v. Colvin*, No. 1:13-cv-130-WC, 2014 WL 1245874, at *4 (M.D. Ala. Mar. 24, 2014) ("The Commissioner must keep in mind that the test for the introductory paragraph [of Listing 12.05] is simply deficits in adaptive functioning, not 'significant deficits.'"); *Acoff v. Colvin*, 2:13-cv-40-WC, 2014 WL 896979, at *4 (M.D Ala. Mar. 6, 2014) ("The introductory paragraph of [Listing 12.05] simply requires deficits in adaptive functioning, not the 'significant limitations' in adaptive functioning as required for a finding [of] mental retardation."); *Jones v. Colvin*, No. 1:11-cv-989-WC, 2013 WL 842704, at *4 n.6 (M.D. Ala. Mar. 6, 2013) ("The Commissioner here, as well as in other cases, seems to conflate the test for a diagnosis of mental retardation under the DSM and a finding that Listing 12.05(C) has been met. The DSM requires 'significant deficits' in adaptive behavior. Whereas, the introductory paragraph of 12.05 simply requires 'deficits.'").

As demonstrated above, courts have readily pointed out that Listing 12.05 does not require an ALJ to find "significant" deficits in adaptive functioning, and the court finds that authority exists to reverse an ALJ's decision on this basis. *See, e.g.*, *Acoff*, 2016 WL

4257555, at *8.  However, as this court has previously noted, there is also some authority indicating that a claimant must demonstrate "significant deficits" in order to satisfy the listing.  *See Knight v. Colvin*, No. 2:15-cv-905-WC, 2016 WL 7159499, at *6 n.6 (M.D. Ala. Dec. 7, 2016) (citing *Hunt v. Social Security Administration Commissioner*, 631 F. App'x 813 (11th Cir. 2015)).  In *Hunt*, an unpublished decision from the Eleventh Circuit Court of Appeals, the court appeared to endorse such a proposition, stating that "[s]ubstantial evidence supports a finding that Hunt suffered no *significant* deficits — as required under the first part of Listing 12.05(C) — in adaptive functioning."  *Hunt*, 631 F. App'x at 816 (emphasis added); *see also Hoyett v. Colvin*, No. 3:15-cv-344-GMB, 2016 WL 4942009, at *5 (M.D. Ala. Sept. 15, 2016).  Courts have struggled to interpret Listing 12.05 because it does not expressly require a specific level of severity that a claimant's deficits in adaptive functioning must reach before he or she satisfies the listing.  Courts have been reluctant to hold that *any* deficit, no matter how insignificant, meets the listing and have proposed various formulations to reflect their understanding that there exists a threshold of adaptive deficits that a claimant must demonstrate to meet the listing.

In *Lewis v. Colvin*, No. 3:14-cv-25/CJK, 2015 WL 5680372, at *10 (N.D. Fla. Sept. 25, 2015), the Plaintiff argued that "because Listing 12.05C does not qualify the phrase 'deficits in adaptive functioning,' any degree of deficit is sufficient to satisfy the Listing." The court reasoned:

> The argument advanced here, however, has been implicitly rejected by the Eleventh Circuit.  In *Perkins v. Comm'r, Soc. Sec. Admin*, the ALJ found the claimant did not meet Listing 12.05C because he lacked the requisite deficits in adaptive functioning.  553 Fed. Appx. 870, 873-74 (11th Cir. 2014).  When

formulating Perkin's RFC, the ALJ found, *inter alia*, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. *Id.* at 875. The Eleventh Circuit affirmed the ALJ's denial of benefits, suggesting there is nothing inconsistent between a determination claimant lacks deficits in adaptive functioning yet still has limitations. *Thus, the correct test appears to require a determination of whether a claimant's deficits in adaptive functioning are so slight as to impeach the I.Q. score.*

*Id.* (emphasis added).

The Eleventh Circuit has also framed the test as whether a claimant seeking to meet the diagnostic criteria of Listing 12.05 has demonstrated "deficits in adaptive functioning consistent with intellectual disability." *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 774 (11th Cir. 2015). Other courts have referred to caselaw suggesting "that the adaptive functioning must be significantly inconsistent with the I.Q. score." *McCrae v. Berryhill*, No. 1:17-cv-228-MW/CAS, 2018 WL 3214784, at *7 (N.D. Fla. June 13, 2018) (quoting *Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla 2010)).

Perhaps due in part to the ambiguity of the test, courts have not uniformly reversed and remanded decisions from ALJs when the decisions refer to a lack of "significant" adaptive deficits with respect to Listing 12.05. For example, in *Hoyett v. Colvin*, the court was presented with an ALJ's decision finding that the claimant had not met Listing 12.05 due to deficits in adaptive functioning. *Hoyett*, 2016 WL 4942009, at *5. Elsewhere in the decision, however, the ALJ had referred to "no *significant* deficits in adaptive capacity," and the ALJ had "relied heavily" on a state agency consultant's opinion that the claimant "did not have significant deficits in her adaptive functioning." *Id.* (emphasis added). The court noted that the "plain language" of Listing 12.05 did not require

significant adaptive deficits. *Id.* However, the court also acknowledged the language from *Hunt* "suggesting that a claimant is required to show significant deficits." *Id.* (citing *Hunt*, 631 F. App'x at 816). Ultimately, the court in *Hoyett* affirmed the ALJ's decision because it was "not convinced the ALJ required Hoyett to show significant deficits in adaptive functioning"[6] and because the court found that substantial evidence supported a finding that the claimant "lacked deficits in adaptive functioning, as shown by her daily activities and behavior." *Hoyett*, 2016 WL 4942009, at *6.

Similarly, this court has previously examined the record for substantial evidence even when the ALJ referred to a lack of "significant deficits in adaptive functioning." *See Knight*, 2016 WL 7159499, at *6 n.6. In *Knight*, the ALJ's finding that the plaintiff did not meet Listing 12.05C was due, in part, to a lack of "significant deficits in adaptive functioning." *Id.* at *5. After reviewing the decision for substantial evidence, this court nevertheless affirmed the decision. In so doing, this court noted that the plaintiff had not raised as a distinct claim of error the fact that the ALJ had required "significant" deficits to be shown. *Id.* at *6 n.6. In dicta, this court also observed that, in light of the language in *Hunt*, the appropriate standard to apply with respect to deficits in adaptive functioning was ambiguous. *Id.* Nevertheless, this court found the ALJ's decision supported by

---

[6] The *Hoyett* court found that the ALJ's use of the word "significant" was "in the context of the findings of the State agency reviewer . . . and all but one of the ALJ's other references to adaptive functioning did not include the word 'significant.'" *Hoyett*, 2016 WL 4942009, at *6. The court notes that, in this case, the ALJ used the incorrect formulation of Listing 12.05C on two occasions in her decision and at no point provided the precise regulatory language.

substantial evidence because of the lack of deficits shown in the record as to the plaintiff's adaptive functioning. *Id.*

Based on these authorities, the court concludes that, notwithstanding the ALJ's reference to a "significant" adaptive deficits standard, the appropriate course is to examine the ALJ's decision for substantial evidence regarding whether Plaintiff has demonstrated deficits in adaptive functioning that are inconsistent with Listing 12.05C. The court will now undertake that analysis.

Neither Listing 12.05 nor the Social Security Regulations provide a definition of precisely what is meant by "deficits in adaptive functioning." The Social Security Administration's Program Operations Manual System ("POMS") imparts that adaptive functioning refers "to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." Soc. Sec. Admin., POMS, DI 24515.056(D)(2) (2012). Likewise, the Diagnostic and Statistical Manual of Mental Disorders ("DSM") explains that adaptive functioning broadly "refer[s] to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical." American Psychological Association, *DSM-V*, p. 37 (5th ed. 2013). The Eleventh Circuit has favorably cited both definitions in applying Listing 12.05. *See, e.g.*, *Schrader v. Acting Comm'r of the Soc. Sec. Admin.*, 632 F. App'x. 572, 576 (11th Cir. 2015); *Rodriguez*, 633 F. App'x at 774.

Determining what level of adaptive functioning is consistent with an intellectual disability is a fact-intensive inquiry, so case outcomes vary widely. *See Lewis*, 2015 WL 5680372, at *7 (collecting cases). Courts have found substantial evidence to support an ALJ's finding that a claimant failed to meet Listing 12.05 where the record demonstrated an extensive employment history and advanced daily activities. *See, e.g.*, *Rodriguez*, 633 F. App'x at 773-74 (finding substantial evidence supported ALJ's determination that claimant did not satisfy Listing 12.05C where the claimant attended high school without special educational assistance, performed household chores, attended church, had a driver's license, and had a work history including multiple skilled and semi-skilled jobs); *Schrader*, 632 F. App'x. at 577 (finding substantial evidence supporting ALJ's decision regarding lack of deficits in adaptive functioning where, although claimant "attended special education classes, she graduated high school with a regular diploma," "was able to groom herself, cook simple meals, perform household chores, drive, watch television, and babysit her nephews without any assistance from others[,]" and she "worked part-time at the laundromat"); *Welch v. Soc. Sec. Admin., Comm'r*, No. 6:14-cv-02472-SGC, 2016 WL 1270619, at *4-5 (N.D. Ala. Mar. 31, 2016) (affirming where the claimant reported "she care[d] for herself and others in a variety of ways without assistance; socialize[d] both with family and with friends and attend[ed] public gatherings; read[] a book per week; and [could] handle financial matters.").

In contrast, other courts have found remand appropriate "where the record is devoid of evidence of an advanced work history and sophisticated activities [of] daily living such

that a reviewing court cannot 'easily discern the ALJ's path or reasoning.'" *Moore v. Berryhill*, No. 3:16-cv-408-GMB, 2017 WL 4017882, at *7 (M.D. Ala. Sept. 12, 2017) (quoting *Tubbs v. Berryhill*, No. 15-00597-B, 2017 WL 1135234, at *6 (S.D. Ala. Mar. 27, 2017)). "An ability to do simple daily activities and simple jobs is not enough." *Southard*, 2015 WL 1186153, at *5 (quoting *Monroe*, 726 F. Supp. 2d at 1355). As the court in *Southard* explained, the ability to perform "unskilled and semiskilled labor with no supervisory responsibilities is not inconsistent with evidence of intellectual disability. Simple daily activities such as dressing one's self, making the bed, dusting and vacuuming, mowing the yard, fishing, and visiting relatives are similarly not indicative of high adaptive functioning." *Id.* at *6; *see also Lewis*, 2015 WL 5680372, at *8-9 (finding claimant's ability to live alone, use public transportation, prepare simple meals, watch television, go to church, perform light housework, and past ability to drive a car were not inconsistent with her intellectual disability); *Hartman v. Colvin*, No. CA 13-00005-C, 2014 WL 3058550, at *6-8 (S.D. Ala. July 7, 2014) (remanding despite the claimant's 3.18 high school GPA where she had the ability to cook, clean, manage her own finances, and drive, she was in special education classes, received a certificate of attendance and not a high school diploma, lived with her mother, and did not have a skilled or semi-skilled employment history).

Turning to the facts at hand, the court will now consider the ALJ's determination that Plaintiff's work history and daily activities showed sufficient adaptive functioning to rebut the presumption of intellectual disability attributed to him based on his IQ scores.

The court is mindful that it is not the court's role to reweigh the evidence or substitute its judgment for that of the ALJ. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997). However, the court must find substantial evidence in the record to support the ALJ's conclusion that Plaintiff did not demonstrate the requisite deficits in adaptive functioning. After giving due consideration to the ALJ's decision and the record as a whole, the court concludes that the ALJ's decision is not supported by substantial evidence.

First, Plaintiff's work history does not indicate that he worked at an advanced level incompatible with intellectual disability. *See Moore*, 2017 WL 4017882, at *7. An ALJ is permitted to consider a claimant's work history when assessing his level of adaptive functioning. *See Rodriguez*, 633 F. App'x at 773-74. In the decision, however, the ALJ did not provide adequate explanation in support of the finding that Plaintiff's work history was incompatible with a finding of intellectual disability. The ALJ noted only that Plaintiff had "at least five years of substantial gainful activity and ha[d] earned more than $20,000 during multiple years." Tr. 26. The court finds this explanation insufficient in light of Plaintiff's work history.

Although Plaintiff sometimes worked at the substantial gainful activity level, he more often did not, and he often had minimal earnings or none at all. Tr. 236-237. *See Durham v. Apfel*, 34 F. Supp. 2d 1373, 1380 (N.D. Ga. 1998). Since 2002, Plaintiff only twice earned more than $20,000 in a year. Tr. 236-237. Moreover, none of Plaintiff's prior jobs required him to supervise others or to employ technical skills. *See Lewis*, 2015 WL 5680372, at *8; *see also Southard*, 2015 WL 1186153, at *6 ("[M]ild intellectual disability

is not inconsistent with non-supervisory, unskilled and semiskilled labor). Plaintiff testified that he had worked as a mechanic's helper; as a janitor, as a warehouse worker stacking merchandise and loading trucks; and as a laborer picking up around construction jobsites. Tr. 23, 44-54. The vocational expert indicated that each of these jobs was unskilled except the mechanic's helper job, which was semi-skilled. Tr. 82-83. Plaintiff testified that he was able to function as a mechanic's helper because he was verbally told what to do. Tr. 23. He testified that he had difficulty learning how to do work in a work setting and that he had never been promoted to a job in which he was in charge. Tr. 58, 60-61. He also testified that he had never obtained a job by himself without someone else's help. Tr. 22, 64. Although Plaintiff has been able to work in the past, the jobs that he has held do not "call into question the I.Q. scores or claim of deficits in adaptive functioning." *See Lewis*, 2015 WL 5680372, at *8; *see also Durham*, 34 F. Supp. 2d at 1380 (finding "no evidence that [jobs as a heavy laborer] are beyond the reach of a mildly retarded individual").

Second, particularly in light of Plaintiff's limited educational and work history, the daily activities that the ALJ cited are not sophisticated activities inconsistent with Plaintiff's IQ scores. There is no question that an ALJ may permissibly consider a claimant's daily activities when determining whether the claimant manifested deficits in adaptive functioning. *See Rodriguez*, 633 F. App'x at 773-74. However, the daily activities that the ALJ cited in this case fall much closer to the "simple" daily activities that are "not indicative of high adaptive functioning." *See Southard*, 2015 WL 1186153, at *6.

Activities such as preparing simple meals, cleaning, yard work, watching television, playing with one's son, taking care of pets, walking, swimming, and other forms of exercise and outdoor activities are not outside of an intellectually disabled person's capabilities.

To be sure, some of these activities have been cited by other courts when finding that a claimant has not demonstrated deficits in adaptive functioning. However, the question of a claimant's level of adaptive functioning is highly factual. In this case, the ALJ did not properly explain how the daily activities, which require a certain level of physical functioning, speak to Plaintiff's intellectual capabilities. When combined with Plaintiff's educational and work history, the court finds that these limited daily activities are insufficient to rebut the presumption of disability reflected by Plaintiff's IQ scores.

Plaintiff testified that he had a twelfth grade education, but stated that his teachers "skipped" him through grades. Tr. 23, 42-43. School records indicate that he was in special education classes and functioning at the upper first grade level at age eighteen, and that he obtained only a certificate of attendance. Tr. 57, 396, 411-412. Plaintiff's school records reflect diagnoses of "mental retardation." Tr. 401, 409, 413, 418, 427. Plaintiff testified that he cannot read or write. Tr. 23, 43. He explained that he is able to write his name, social security number, and birthdate, but cannot read a book, a newspaper article, or a clock. Tr. 22, 44, 63. He required assistance filling out the paperwork for his disability application. Tr. 22, 63. He cannot perform arithmetic, count money, pay bills, handle a

savings account, or use a checkbook or money order.  Tr. 23, 261.  Although Plaintiff has a driver's license, the test had to be administered orally because of his illiteracy.[7]  Tr. 62.

The ALJ noted many of these facts in the decision.  Tr. 22-23.  Although the ALJ made a general finding that she did not find Plaintiff's subjective complaints fully credible, she did not specifically address whether she found these aspects of Plaintiff's mental and adaptive functioning credible.  To the extent that these statements by Plaintiff were uncontroverted in the record, the court is unable to "easily discern the ALJ's path or reasoning" in finding that Plaintiff did not have deficits in adaptive functioning.  *Moore*, 2017 WL 4017882, at *7.  This court has previously observed that "special education classes indicate deficits in adaptive functioning."  *Butts*, 2014 WL 1245874, at *4 (citing *Vaughn v. Astrue*, 494 F. Supp. 2d 1269, 1274 (N.D. Ala. 2007)).  Likewise, the inability to read or write has been found to be indicative of deficits in adaptive functioning.  *See Cammon v. Astrue*, No. 3:08-cv-0131-JFK, 2009 WL 3245458, at *12 (N.D. Ga. Oct. 5, 2009) (remanding case for ALJ to reevaluate whether claimant had deficits in adaptive functioning in light of her history of special education classes and illiteracy); *see also Vaughn*, 494 F. Supp. 2d at 1274 (finding that claimant established deficits in adaptive functioning where she had a history of special education classes, read at a fourth grade level, and performed arithmetic at a second grade level).  It is insufficient for the ALJ to

---

[7] Plaintiff testified that he had not driven for "two or three years" prior to the hearing due to a grand mal seizure.  Tr. 41.

simply record the existence of these limitations in the decision without explaining why the limitations failed to establish adaptive deficits under Listing 12.05C.

The court's final difficulty discerning substantial evidence to support the ALJ's finding that Plaintiff lacked adaptive deficits is because the ALJ, in fact, credited the opinion of a doctor who found that Plaintiff did have adaptive deficits.  On December 22, 2014, Dr. Thomas LeCroy provided a Psychiatric Review Technique in which he opined that Plaintiff had moderate restrictions of the activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace.  Tr. 117-118.  The ALJ gave this opinion "great weight," finding that the doctor's opinions were "consistent with [Plaintiff's] treatment notes."  Tr. 21.

Dr. LeCroy also provided an RFC assessment of Plaintiff's mental limitations.  Tr. 119-123.  Dr. LeCroy opined that Plaintiff had a number of moderate limitations including his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.*

Notably, Dr. LeCroy opined that Plaintiff had "adaptation limitations," including moderate limitations of his ability to respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  Tr. 122-123.  Dr. LeCroy explained that Plaintiff "would learn and remember simple work routines" and "could understand and remember simple instructions but not detailed ones."  Tr. 121.  He opined that Plaintiff's "[c]ontact with the public should be casual.  Feedback should be supportive.  Criticism should be tactful and non-confrontational.  Contact with coworkers should be casual."  Tr. 122.  Dr. LeCroy also opined that Plaintiff

> Could carry out simple instructions and sustain attention to simple familiar tasks for extended periods.  [Plaintiff] would benefit from a flexible schedule and would be expected to miss 1-2 days of work per month due to depression.  [Plaintiff] would benefit from casual supervision.  [Plaintiff] would function best with her [*sic*] own work area without proximity to others because of anxiety around non family.   [Plaintiff] would tolerate ordinary work pressures and function best with a familiar work routine but should avoid excessive workloads, quick decision-making, rapid changes and multiple demands.  [Plaintiff] would benefit from regular rest breaks and a slow pace but will still be able to maintain a pace consistent with the mental demands of competitive level work.

*Id.*  Regarding Plaintiff's adaptive functioning, Dr. LeCroy opined that Plaintiff "could adapt to infrequent, well-explained changes with rehearsal" and that he "would need help with long term planning and goal setting but not short term planning and goal setting."  Tr. 123.

Curiously, when considering Dr. LeCroy's opinion in the context of Plaintiff's RFC, the ALJ gave the opinion only "partial weight," finding that it was "somewhat vague" and

that additional records had been received since Dr. LeCroy rendered his opinion. Tr. 29. Nevertheless, it appears that the ALJ included some of Dr. LeCroy's opinions as to Plaintiff's adaptive functioning in the RFC assessment because the ALJ limited Plaintiff to "simple, repetitive, and routine tasks;" "occasional interaction with supervisors, coworkers and the public;" and "occasional changes in a routine work setting." Tr. 21.

The court is not able to follow the ALJ's reasoning about Dr. LeCroy's opinions. The ALJ did not properly explain why she afforded great weight to Dr. LeCroy's PRT assessment while giving only partial weight to his RFC assessment rendered the same day. The ALJ was entitled to assign Dr. LeCroy's opinion as little or as much weight as she thought it deserved. However, the weight given must be adequately explained and any inconsistencies should be resolved. Most importantly, the ALJ did not explain how an RFC assessment reflecting moderate limitations in adaptive functioning is consistent with her conclusion that Plaintiff had not demonstrated deficits in adaptive functioning.

For these reasons, the court finds that the ALJ's decision with respect to Listing 12.05C is not supported by substantial evidence. The ALJ failed to apply the proper criteria in evaluating whether Plaintiff met the requirements of Listing 12.05C, and failed to explain her reasoning with respect to Plaintiff's educational and work history, daily activities, and Dr. LeCroy's opinion. These errors in the ALJ's decision require the court to remand the decision to the Commissioner for the ALJ to specifically consider Listing 12.05C under the applicable standard and to clarify the reasons for finding that the evidence

of record rebuts the presumption of deficits in adaptive functioning to which Plaintiff is entitled based on his IQ scores.

The court disagrees with the Commissioner's contention that the ALJ's error is harmless. Doc. 13 at 8 n.5. The Commissioner's argument presupposes that the ALJ's decision on remand will be the same. Given the court's discussion herein of the appropriate legal standard, as well as the relevant evidence that the ALJ did not appropriately consider, the court cannot be so certain.

The Commissioner notes that Plaintiff did not allege intellectual deficits as a basis for disability and that Plaintiff's attorney did not argue the applicability of Listing 12.05C to the ALJ. Doc. 13 at 5 n.3. The Commissioner argues that the ALJ was not required to address Listing 12.05. *Id.* (citing *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010)). Although that may be the case, the ALJ found that the evidence of record warranted consideration of Listing 12.05, so to the extent that the ALJ relied on the Listing as a basis to deny benefits, such a finding is reviewable by this court. Upon review, the court concludes that the ALJ's decision should be reversed and remanded to the Commissioner for further proceedings.

## VI.    CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is REVERSED and this matter is REMANDED back to

the Commissioner of Social Security for further proceedings consistent with this opinion.

A separate judgment will issue.

Done this 30th day of October, 2018.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE